Rebecca K. Smith
Public Interest Defense Center, P.C.
P.O. Box 7584
Missoula, MT 59807
(406) 531-8133
publicdefense@gmail.com

Timothy M. Bechtold
Bechtold Law Firm, PLLC
P.O. Box 7051
Missoula, MT 59807
(406) 721-1435
tim@bechtoldlaw.net

Attorneys for Plaintiffs

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, NATIVE ECOSYSTEMS COUNCIL, <br><br>     Plaintiffs, <br><br> vs. <br><br> HILARY COOLEY, U.S. Fish & Wildlife Service Grizzly Bear Recovery Coordinator; MARTHA WILLIAMS, Director, U.S. Fish & Wildlife Service; DEB HAALAND, Secretary, Department of Interior, <br><br>     Defendants. | CV- <br><br> COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF |

## I.  INTRODUCTION

1.  This is a civil action for judicial review under the Administrative Procedure
    Act (APA) of the U.S. Fish and Wildlife Service's (USFWS) failure to act
    and unreasonable delay regarding its Final Rule and Regulation, Record of
    Decision, and Final Environmental Impact Statement (Final EIS) on
    Bitterroot grizzly bear recovery and establishment of a nonessential
    experimental population in the Bitterroot area of Montana and Idaho, and its
    Proposed Rule to revoke the same and implement the "no action" alternative
    from the Final EIS.

2.  Plaintiffs Alliance for the Wild Rockies and Native Ecosystems Council
    attest that Defendants' conduct and/or failure to act constitutes unlawful
    unreasonable delay and/or is arbitrary and capricious, an abuse of
    discretion, and/or otherwise not in accordance with law.

3.  Defendants' failure to issue a new final rule following the publication of
    their Proposed Rule, and/or Defendants' failure to comply with the existing
    Final Rule and Regulation, violates the APA.  Additionally, Defendants'
    failure to prepare a supplemental EIS in light of significant changes violates
    the APA and National Environmental Policy Act (NEPA), 42 U.S.C.
    §§4331 *et seq*.

4.  Plaintiffs seek a declaratory judgment, injunctive relief, the award of costs,

and expenses of suit, including attorney and expert witness fees pursuant to the Equal Access to Justice Act, 28 U.S.C. §2412, and/or such other relief as this Court deems just and proper.

## II. JURISDICTION

5.    This action arises under the laws of the United States and involves the United States as a Defendant. Therefore, this Court has subject matter jurisdiction over the claims specified in this Complaint pursuant to 28 U.S.C. §§ 1331, 1346.

6.    An actual controversy exists between Plaintiffs and Defendants. Plaintiffs' members use and enjoy the Bitterroot region for hiking, fishing, hunting, camping, photographing scenery and wildlife, and engaging in other vocational, scientific, spiritual, and recreational activities. Plaintiffs' members intend to continue to use and enjoy the area frequently and on an ongoing basis in the future.  Plaintiffs' members are heavily invested in grizzly bear recovery in the Bitterroot region and understand that grizzly recovery in the Bitterroot is necessary for the long-term viability and recovery of grizzly bears throughout the lower 48 states.

7.    The aesthetic, recreational, scientific, spiritual, and educational interests of Plaintiffs' members have been and will be adversely affected and irreparably injured if Defendants continue to unreasonably delay taking

final action, and continue to unreasonably delay supplementing the EIS to reflect and address dramatically changed conditions over the past 20 years since the original final EIS was published.  These are actual, concrete injuries caused by Defendants' failure to comply with mandatory duties under the APA and NEPA. The requested relief would redress these injuries and this Court has the authority to grant Plaintiffs' requested relief under 28 U.S.C. §§ 2201 & 2202, 5 U.S.C. §§ 705 & 706.

### III. VENUE

8.    Venue in this case is proper under 28 U.S.C. §1391(e) and Local Rule 3.2(b).  Defendant Cooley, and the office of the Grizzly Bear Recovery Program, are located in Missoula County.  Additionally, the Bitterroot region falls in part within Missoula County and Ravalli County.  Missoula County and Ravalli County are in the Missoula Division of the United States District Court for the District of Montana.

### IV. PARTIES

9.    Plaintiff ALLIANCE FOR THE WILD ROCKIES is a tax-exempt, non-profit public interest organization dedicated to the protection and preservation of the native biodiversity of the Northern Rockies Bioregion, its native plant, fish, and animal life, and its naturally functioning ecosystems. Its registered office is located in Missoula, Montana. The

Alliance has over 2,000 individual members.  Members of the Alliance observe, enjoy, study, and appreciate the Bitterroot's native wildlife, including grizzly bears, as well as water quality and terrestrial habitat quality, and expect to continue to do so in the future.   Alliance's members' professional and recreational activities are directly affected by Defendants' failure to perform their duties.  Alliance for the Wild Rockies brings this action on its own behalf and on behalf of its adversely affected members.

10.     Plaintiff NATIVE ECOSYSTEMS COUNCIL is a non-profit Montana corporation with its principal place of business in Three Forks, Montana. Native Ecosystems Council is dedicated to the conservation of wildlife and natural resources on public lands in the Northern Rockies.  Its members observe, enjoy, and study grizzly bears throughout the Northern Rockies, and expect to continue to do so in the future.   Its members' professional and recreational activities are directly affected by Defendants' failure to perform their duties. Native Ecosystems Council brings this action on its own behalf and on behalf of its adversely affected members.

11.     Defendant HILARY COOLEY is the U.S. Fish & Wildlife Service Grizzly Bear Recovery Coordinator.  The Grizzly Bear Recovery Program is the agency program responsible for the Bitterroot grizzly recovery EIS.

12.     Defendant MARTHA WILLIAMS is the Director of the U.S. Fish &

Wildlife Service, and is responsible for lawful management of recovery

programs for terrestrial species listed under the Endangered Species Act,

including the grizzly bear.

13.    Defendant DEB HAALAND is the Secretary of the Department of Interior,

and is responsible for lawful management of recovery programs for

terrestrial species listed under the Endangered Species Act, including the

grizzly bear.  Defendant Haaland's office issued the Final Rule on

November 14, 2020.

## V. FACTUAL ALLEGATIONS

**A.    November 14, 2000 Final Rule**

14.    On November 14, 2020, Defendants issued the "Record of Decision and

Statement of Findings for the Environmental Impact Statement on Grizzly

Bear Recovery in the Bitterroot Ecosystem AND Final Rule on

Establishment of a Nonessential Experimental Population on Grizzly Bears

in the Bitterroot Area of Idaho and Montana" (Final Rule).

15.    The Final Rule "is effective December 18, 2000."

16.    The Final Rule "is a significant regulatory action []."

17.    The Final Rule is codified at 50 C.F.R. §17.84 (l).

18.    The Final Rule found: "The reestablishment of a grizzly bear population in

the Bitterroot ecosystem will increase the survival probabilities and further

the conservation of the species in the lower 48 States."

19.    The Final Rule states: "We will undertake the grizzly bear recovery project in the Bitterroot ecosystem in cooperation with the U.S. Forest Service, other Federal agencies, the States of Idaho and Montana, the Nez Perce Tribe, and entities of the Canadian Provincial government. We will also enter into agreements with the appropriate Canadian Provincial government agencies to obtain grizzly bears."

20.    The Final Rule states: "Grizzly bears (*Ursus arctos*) for this reintroduction will be obtained from Canadian and U.S. grizzly populations with permission from the Canadian Provincial governments and concurrence from the appropriate State officials. Grizzly bears can be taken by authorized State, Federal, and tribal authorities for scientific or research purposes under the authorities granted by 50 CFR 17.40."

21.    The Final Rule states: "The Bitterroot ecosystem recovery program proposes moving a minimum of 25 grizzly bears of both sexes over a 5-year period from areas in Canada (in cooperation with Canadian authorities) and the United States that presently have populations of grizzly bears living in habitats that are similar to those found in the Bitterroot ecosystem."

22.    The Final Rule states: "We will reintroduce only bears with no history of conflict with humans or livestock. We will capture and reintroduce bears at

the time of year optimal to their survival. This process will likely occur

when grizzly bear food supplies in the Bitterroot ecosystem are optimum.

We plan to transport bears to east-central Idaho, provide any necessary

veterinary care, and fit them with radio collars in order to monitor them by

the use of radiotelemetry."

23.    The Final Rule states: "We will determine the movements of individual

grizzly bears and how they use their habitat, and keep the public informed

of general bear locations and recovery efforts. We will release bears close

enough to each other to create a 'colony' or population of bears, providing

the basis from which they will successfully reproduce and expand in

numbers."

24.    The Record of Decision states: "Subject to availability of funding, grizzly

bears will be reintroduced into the Selway-Bitterroot Wilderness portion of

the Recovery Area during the second year of implementation. Specific

reintroduction sites will be identified by the land and wildlife management

agencies and the [Citizen Management Committee]. The Service, in

coordination with the Forest Service, States of ldaho and Montana, Nez

Perce Tribe, and the [Citizen Management Committee] will release a

minimum of 25 grizzly bears into the Recovery Area over a period of 5

years. . . .This release will be no sooner than l year after initiation of

formation of the [Citizen Management Committee] and initiation of

sanitation and information efforts."

25.   The Final Rule mapped the "Bitterroot Grizzly Bear Experimental

Population Area" as follows:



The Bitterroot Grizzly Bear Recovery Area and Bitterroot Grizzly Bear Experimental
Population Area.

Final Rule - 43

8

**B.** **June 22, 2001 Proposed Rule**

26.    After years of planning, meeting, analysis, and formal notice-and-comment rulemaking to promulgate a Final Rule and regulation to recover Bitterroot grizzly bears, on June 22, 2001, USFWS issued a Proposed Rule to scrap the entire plan: "We are now proposing to select the No Action Alternative as our Preferred Alternative (see Notice of Intent elsewhere in this edition of the Federal Register) and are currently requesting public comments on this action. After receipt and review of all comments, the Service will make a final decision with regard to this proposal. If we select the No Action Alternative, we will remove the pertinent regulations."

27.    The Proposed Rule stated: "we believe that it is neither prudent nor consistent with our recovery priorities to expend our limited recovery funds and staff effort on establishment of a nonessential, experimental grizzly bear population in the [Bitterroot Ecosystem] at this time. Moreover, we believe that further consideration of the legitimate safety concerns of the current residents of [Bitterroot Ecosystem] against reintroduction is warranted."

28.    Although the Proposed Rule stated "[a]fter receipt and review of all comments, the Service will make a final decision with regard to this proposal," USFWS never issued a final decision, i.e. a final rule, following publication of this Proposed Rule.

29.    Although the Proposed Rule stated "[i]f we select the No Action

Alternative, we will remove the pertinent regulations," the regulations are

still in effect at 50 C.F.R. §17.84 (l).

30.    Neither the "Preferred Alternative," nor the "No Action Alternative" has

ever been implemented.

**C.    Background – Grizzly Bears in the Bitterroot**

31.    The Bitterroot Ecosystem is one of the largest contiguous blocks of Federal

land remaining in the lower 48 United States.

32.    The core of the ecosystem contains two wilderness areas that comprise the

largest block of wilderness habitat in the Rocky Mountains south of Canada.

33.    Of all remaining "unoccupied" grizzly bear habitat in the lower 48 States,

this area has the best potential for grizzly bear recovery, primarily due to the

large wilderness area.

34.    As such, the Bitterroot Ecosystem offers excellent potential to support a

healthy population of grizzly bears and to boost long-term survival and

recovery prospects for this species in the contiguous United States.

35.    Historically, the grizzly bear was a widespread inhabitant of the Bitterroot

Mountains in east-central Idaho and western Montana.

36.    Idaho in particular may have supported a population of around 4,300 grizzly

bears.

37.   The demise of the grizzly from the Bitterroot Ecosystem was due to the actions of humans. Bears were actively killed for their fur, for sport, and to eliminate possible threats to humans and domestic livestock.

38.   The Grizzly Bear Recovery Plan, finalized in 1982 (U.S. Fish and Wildlife Service 1982), called for the evaluation of the Selway-Bitterroot ecosystem as a potential recovery area.

39.   Subsequently, an interagency team of grizzly bear scientists concluded the area provided suitable habitat and could support 200 to 400 grizzly bears.

40.   In 1991, the Interagency Grizzly Bear Committee subsequently endorsed the Bitterroot ecosystem as a grizzly bear recovery area, and requested that USFWS initiate measures to achieve recovery in the area.

41.   USFWS revised the Grizzly Bear Recovery Plan in 1993 and produced the Bitterroot Ecosystem Recovery Plan Chapter (Bitterroot Supplement) as an appendix in 1996.

42.   The Bitterroot Supplement called for the reintroduction of grizzly bears into the Bitterroot ecosystem.

43.   The Bitterroot Supplement identified a tentative long-term recovery objective of approximately 280 grizzly bears for the Bitterroot ecosystem.

44.   In 1993, agencies of the Interagency Grizzly Bear Committee requested that an EIS be prepared for Bitterroot grizzly recovery.

45. In 1995, USFWS published a notice of intent to prepare a draft EIS for grizzly bear recovery in the Bitterroot.

46. In 1997, the Draft EIS for Bitterroot grizzly bear recovery was released to the public.

47. On March 24, 2000, the Final EIS for Bitterroot grizzly bear recovery was released to the public.

48. The Final EIS considered six alternatives:

  a. Restoration of Grizzly Bears as a Nonessential Experimental Population with Citizen Management (Preferred Alternative),

  b. Restoration of Grizzly Bears as a Nonessential Experimental Population with Service Management,

  c. Natural Recovery - The No Action Alternative,

  d. No Grizzly Bear Alternative,

  e. Restoration of Grizzly Bears as a Threatened Population with Full Protection of the Act and Habitat Restoration, and

  f. Restoration of Grizzly Bears as a Threatened Population with Full Protection of the Act and Service Management.

49. On November 13, 2000, USFWS signed the Record of Decision on the Final EIS, and selected the Preferred Alternative – Restoration of Grizzly Bears as a Nonessential Experimental Population with Citizen Management

50.    The Decision states: "The purpose of this alternative is to restore grizzly bears to central Idaho, designate this population as "nonessential experimental," and implement provisions within sections 4 and 10(j) of the Endangered Species Act (ESA) to conduct special management to address local concerns."

51.    As noted above, however, on June 22, 2001, USFWS issued a Proposed Rule to select the No Action Alternative.

52.    The "No Action Alternative" in the EIS is something of a misnomer because it includes the following required actions:

a.    The USFWS would designate the Bitterroot Grizzly Bear Recovery Zone as delineated in Figure S-4, and consistent with the 5,500 square mile Bitterroot Grizzly Bear Evaluation Area (BEA) as defined in the Bitterroot Ecosystem Recovery Plan Chapter - Supplement to the Grizzly Bear Recovery Plan (USFWS 1993, 1996).

b.    The USFWS would establish a tentative long-term recovery goal of approximately 280 grizzly bears (bears distributed over 5,500 mi of designated 2 wilderness and adjacent lands) within the recovery zone (USFWS 1996) (Figure S-4).

c.    Primary grizzly bear management responsibility would reside with the USFWS and include active participation by federal land management

agencies, the states of Idaho and Montana, and the Nez Perce Tribe.

d.    Upon documentation of grizzly bear(s) in the BE, the USFWS would conduct an extensive and objective public education and information program to inform the public about grizzly bears and their management under the ESA.

e.    The USFWS would continue to evaluate reported sightings of grizzly bears in the BE to determine their presence. The USFWS would also coordinate a monitoring program within the recovery zone to determine the status of recolonization.

f.    The national forests within the recovery zone would continue to manage habitat to meet or exceed their existing Forest Plan standards for big game habitat management. ESA Section 7(a)(2) would apply upon documentation of grizzly bear presence in the BE, and all federal actions within the recovery zone would be subject to Section 7 consultation with the USFWS.

g.    Upon documentation of grizzly bear(s) in the BE, the USFWS would evaluate the adequacy of land-use restrictions to protect suitable grizzly bear habitat within the Bitterroot recovery zone and within potential linkage zones to other occupied recovery zones. The USFWS would use the existing evaluation of adjacent wilderness

14

areas to consider them as additions to the recovery zone (to include the portion of the Frank Church-River of No Return Wilderness south of the Salmon River).

h.    The USFWS, in cooperation with IDFG and MDFWP would apply the IGBC nuisance grizzly bear management guidelines to grizzly bears in conflict with humans or domestic animals.

i.    Land-use restrictions could be implemented when necessary if illegal killing threatens grizzly bear recovery.

53.    EIS Figure S-4, the Recovery Zone for Alternative 4, is set forth below:



Figure S-4.  The Bitterroot Grizzly Bear Recovery Zone for Alternative 2 - *the No Action Alternative - Natural Recovery*.

54.     The No Action Alternative in the EIS further states: "Ongoing land-use

activities (including timber harvest, minerals extraction, and public access

and recreation) could be altered solely for grizzly bears if grizzly bear

presence was documented in the BE, and research indicates that current

habitat management is not adequate to maintain suitable grizzly bear

habitat, or that linkage zone restrictions are necessary to promote grizzly

bear recolonization."

**D.     Changed Conditions – Grizzly Bears in the Bitterroot**

55.     When the Final Rule was published in November 2000, "[t]he last verified

death of a grizzly bear in the Bitterroot Mountains [had] occurred in 1932,

and the last tracks [had been] observed in 1946 []."

56.     When the Final Rule was published in November 2000, "no verified tracks

or sightings [had] been documented in more than 50 years, and [there was

no current] evidence of any grizzly bears in the Bitterroot ecosystem[]."

57.     When the Final Rule was published in November 2000, USFWS stated that

due to the "10j" status of the reintroduced grizzly bears,  "[f]ormal section 7

consultation will not be required for any proposed U.S. Forest Service

activity in the Bitterroot ecosystem as a result of the experimental

reintroduction of bears, and the requirements of section 7(a)(2) will not

apply . . . . However, because nonessential experimental grizzly bears will

be treated as a species proposed for listing, the conferencing requirements

under section 7(a)( 4) will apply."

58.     When the Final Rule was published in November 2000, USFWS stated:

"We do not foresee any likely situation that would require us to change the

nonessential experimental status until the grizzly bear is recovered and

delisted in the Bitterroot ecosystem according to provisions outlined in the

Recovery Plan."

59.     Nonetheless, almost 20 years later, on January 21, 2020, USFWS sent a

letter to the National Forest Supervisors of the Bitterroot, Nez Perce-

Clearwater, Lolo, and Salmon-Challis National Forests in Montana and

Idaho, which states in part (emphasis added):

> The [Bitterroot Grizzly Bear Experimental Population Area]
> was designated as a nonessential experimental population by
> 50 CFR § 17.84(1), and the rule authorized the release of
> grizzly bears into the BGBEPA, outside its current range, under
> certain conditions. The Service is aware of one collared bear
> within the BGBEPA, and it travelled into the BGBEPA from
> the Cabinet-Yaak recovery zone.  This grizzly bear was not
> released or reintroduced into the BGBEPA by the Service, and
> Service has not released or reintroduced any grizzly bears into
> the BGBEPA. Therefore, grizzly bears that are present in the
> BGBEPA are not covered by the 10(j) rule and are considered
> threatened under the ESA. This means that ESA section 7
> consultation obligations apply to proposed federal agency
> actions that may affect grizzly bear in the BGBEPA, as with
> any grizzly bear in the lower 48 States.
>
> We are updating the species occurrence map with locations
> where grizzly bears may be present within and near the

17

BGBEPA. Upon completion, we will provide that map to you, to inform where section 7 consultation is advised.

60.    The most recent version of USFWS's "may be present" grizzly bear map (dated January 11, 2021) is set forth below, and includes areas with known populations, as well as watersheds with a verified occurrence, and watersheds directly adjacent to watersheds with a verified occurrence:



61.    As noted in the map above, USFWS concedes that grizzly bears may be present in a number of locations between the Bitterroot Recovery area and other Recovery Zones, as well as within the Bitterroot Recovery Area itself.

62.    Over the past five years, grizzly bears have been encountered or confirmed

in Montana in the town of Lolo, up Bass Creek, in the Rock Creek area, in the Big Hole, in the Sapphires, on the border of the Lee Metcalf Wildlife Refuge on the Bitterroot River (on a small golf course), in the Lolo Hots Springs area, in Missoula's North Hills, outside of Missoula in the Miller Creek area, in the Eight Mile area northeast of Florence, and near the headwaters of the east fork of the Bitterroot River.

63.    Over the past five years, grizzly bears have also been encountered or confirmed in Idaho traveling through the St. Joe area into the Selway-Bitterroot Wilderness Area, in the Fish Creek Meadows area south of Grangeville, in the Newsome Creek/Red River area, in the Clear Creek/Big Cedar area, and east of Leadore, Idaho.  Idaho Fish and Game also confirmed grizzly DNA in a den on Blackdome Peak in the St. Joe in 2017.

64.    In USFWS's Grizzly Bear Recovery Program 2020 Annual Report, the agency states: "grizzly bears have increasingly been confirmed nearby and within the [Bitterroot Ecosystem] . . . ."

65.    The agency further states that in addition to known, verified grizzly bears, "[i]t is possible that additional undetected individuals are currently in the area."

66.    In the 2020 Annual Report, USFWS states: "In 2000, the Service issued a rule designating the Bitterroot Grizzly Bear Experimental Area as a nonessential experimental (10(j)) population and authorized reintroduction

19

of grizzly bears under certain conditions. Reintroduction has not occurred and there are currently no plans to do so."

67.  In March 2021, USFWS issued a "5-Year Status Review for Grizzly Bears in the Lower-48 States."

68.  The 5-Year Review finds that the grizzly bear population in the lower 48 States is likely to become in danger of extinction within the foreseeable future throughout all of its range.

69.  The 5-Year Review states: "viability for the grizzly bear in the lower-48 States as a whole only increases under the two optimistic future scenarios, which rely on increases in conservation efforts such that the [Bitterroot Ecosystem] and North Cascades support resilient populations."

70.  More specifically, "Future Scenario 5 is an optimistic scenario under which conservation increases significantly. As a result, resiliency, redundancy, and representation for the grizzly bear improve. . . .The [Bitterroot Ecosystem] and North Cascades shift from functionally extirpated condition with no resiliency, to low resiliency under this scenario, due to human-facilitated restoration of the North Cascades and augmentation of the [Bitterroot Ecosystem]."

71.  In other words, one of the best chances for recovery of the lower-48 States grizzly population is augmentation and recovery in the Bitterroot area.

72.  Notably, USFWS has long participated in an augmentation program for one

other grizzly population in the lower-48 States: the Cabinet Mountains portion of the Cabinet-Yaak grizzly population.

73. As noted in "Density, Distribution, and Genetic Structure of Grizzly Bears in the Cabinet-Yaak Ecosystem," often referred to as "Kendall et al (2016)," "[c]oncern over persistence of the critically small and isolated Cabinet population prompted the establishment of a population augmentation program."

74. The Cabinet augmentation program added four female bears from 1990-1994, and seven female bears and three male bears from 2007-2012.

75. Kendall et al (2016) finds: "it is clear that the augmentation program likely rescued this population from extirpation."

76. Kendall et al (2016) finds: "The Cabinet population was essentially rescued from extirpation through the successful augmentation program that began in the early 1990s. Population recovery will require continuation of these programs."

77. A recent report entitled, "The Grizzly Bear Promised Land: Past, Present & Future of Grizzly Bears in the Bitterroot, Clearwater, Salmon & Selway Country," by Dr. David Mattson, finds that grizzly recovery in the Bitterroot population is the lynchpin to a long-term, sustainable, viable grizzly population in the lower-48 States.

78. The map below from "Promised Land" shows estimated potential

distribution of grizzly bears in the Northern Rockies with full occupancy of

potential suitable habitat.  Dark green is core distribution; light green is

peripheral distribution; red dots are verified grizzly locations; and green

arrows are main connectors between ecosystems:



79.   "Promised Land" also provides a map of candidate Bear Management Units
      to allows the agencies to begin to design and implement habitat
      management standards (road density thresholds and secure habitat blocks)
      for the Nez-Perce and Clearwater National Forests within in the Bitterroot
      Recovery Zone:



## VI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

*Defendants' failure to issue a Final Rule following publication of the June 22,*

*2001 Proposed Rule constitutes unreasonable delay and violates the APA.*

80.   All previous paragraphs are incorporated by reference.

81.   The APA mandates: "With due regard for the convenience and necessity of

the parties or their representatives and *within a reasonable time, each*

*agency shall proceed to conclude a matter presented to it.*"  5 U.S.C. § 555

(b).

82.   The Ninth Circuit holds: "Under the applicable law, [an agency] has to

reach some final decision.  To 'conclude [the] matter,' [an agency] must

enter a final decision subject to judicial review, and they must do so 'within

a reasonable time.' 5 U.S.C. § 555(b)[.]"  *In re A Cmty. Voice*, 878 F.3d

779, 784–85 (9th Cir. 2017).

83.   "An agency cannot simply refuse to exercise its discretion to conclude a

matter. [] Having chosen to [undertake rulemaking], [an agency] came under

a duty to conclude a rulemaking proceeding within a reasonable time."  *Id.*

(citation omitted).

84.   If an agency does not "conclude a matter" "within a reasonable time," a

reviewing court shall compel the agency action that has been unlawfully

withheld or unreasonably delayed under 5 U.S.C. §706 (1).  *In re Int'l*

*Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992); *see also Pub.*

*Citizen Health Rsch. Grp. v. Auchter*, 702 F.2d 1150, 1157–58 (D.C. Cir.

1983).

85.  An agency's "asserted justifications for the delay become less persuasive

the longer the delay continues."  *In re Int'l Chem. Workers Union*, 958

F.2d at 1150.

86.  While there is no *per se* rule regarding how long a delay must be in order to

constitute "unreasonable delay," no court has ever condoned a 20-year delay

in issuing a final rule in notice-and-comment rulemaking under the APA

once a proposed rule has been issued.  *See In re Nat. Res. Def. Council,*

*Inc.*, 956 F.3d 1134, 1139 (9th Cir. 2020) (more than ten-year delay is

unreasonable and "nothing short of egregious"); *In re A Cmty. Voice*, 878

F.3d at 787 (eight-year delay unreasonable). In fact, courts have held the

"reasonable time for agency action is counted in weeks or months, not

years." *In re Am. Rivers and Idaho Rivers United*, 372. F.3d 413, 419 (D.C.

Cir. 2004).

87.  In this case, the APA compels Defendants to conclude rule-making by

issuing a final rule after it issued the Proposed Rule.  Defendants have

unreasonably delayed in complying with this mandate because over 20 years

have passed since Defendants issued their Proposed Rule to remove 50

C.F.R. §17.84 (l) and select the "No Action Alternative" and Defendants

have not yet issued a final rule for the Proposed Rule.  By refusing to issue a

final rule for the Proposed Rule, Defendants have unreasonably delayed in

violation of the APA .

### SECOND CLAIM FOR RELIEF

*Alternatively, Defendants' failure to comply with the terms*

*of the November 14, 2000 Final Rule and Regulation constitutes unreasonable*

*delay and violates the APA.*

88.   All previous paragraphs are incorporated by reference.

89.   The November 14, 2000 Final Rule and Regulation stated that grizzlies

would be relocated from other areas into the Bitterroot area starting in 2002,

and that a minimum of 25 grizzly bears of both sexes would be relocated

into the Bitterroot area over a 5-year period.

90.   Defendants concede: "Reintroduction has not occurred and there are

currently no plans to do so."

91.   Defendants have unreasonably delayed in complying with the terms of the

Final Rule and Regulation.

92.   The unreasonable delay of over 20 years violates the APA.

## THIRD CLAIM FOR RELIEF

*Defendants' failure to prepare a supplemental EIS violates NEPA and the APA.*

93.  All previous paragraphs are incorporated by reference.

94.  The CEQ regulations mandate: "Agencies: (1) Shall prepare supplements to either draft or final environmental impact statements if: (i) The agency makes substantial changes in the proposed action that are relevant to environmental concerns; or (ii) There are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts."  40 C.F.R. § 1502.9 (c); *see e.g. Klamath Siskiyou Wildlands Ctr. v. Boody*, 468 F.3d 549, 562 (9th Cir. 2006); *League of Wilderness Defs. v. Connaughton*, 752 F.3d 755, 761 (9th Cir. 2014); *Native Ecosystems Council v. Tidwell*, 599 F.3d 926, 937 (9th Cir. 2010).

95.  In this case, there are substantial changes to the proposed action because although Defendants chose Alternative 1 (reintroduction/augmentation and 10j rule) over 20 years ago, they have never implemented/complied with it. Moreover, to the extent Defendants have unlawfully chosen to implement Alternative 3 (No Action Alternative) without a final decision choosing that alternative, they have also significantly changed that alternative because the "No Action Alternative" does not propose no action.  Instead, the No Action Alternative includes a list of actions that would occur if grizzly bears are

documented in the Bitterroot area, including but not limited to the mandate that "the USFWS would evaluate the adequacy of land-use restrictions to protect suitable grizzly bear habitat within the Bitterroot recovery zone and within potential linkage zones to other occupied recovery zones." No such analysis has occurred. Thus, Defendants' conduct has changed both the relevant alternatives.

96.    Alternatively, or in addition, there are significant new circumstances or information because the underlying premise of the original EIS was that there had been no confirmed grizzly bears in the Bitterroot area for decades. Based on that premise, Defendants chose to implement a 10(j) rule for the reintroduction of an "experimental" and "nonessential" population, which is not subject to Section 7 consultation requirements for a threatened species listed under the Endangered Species Act. As discussed in detail above, circumstances have changed dramatically in this regard over the past five years. There have now been multiple confirmed grizzly bears in the Idaho and Montana portions of the Bitterroot area, as well as its vicinity. Defendants themselves now concede that grizzly bears "may be present" throughout this area, and that grizzly bears must be treated as "threatened" in this area with normal Section 7 consultation, and can no longer be governed under a 10(j) rule. This is a significant change to the primary

factual premise of the original EIS.

97.     Regardless of whether Defendants choose to issue a final rule implementing

the June 2001 Proposed Rule (No Action Alternative), as discussed in

Claim One above, or choose to finally implement an updated version of the

November 14, 2000 Final Rule (augmentation) as discussed in Claim Two

above, or choose to take some other course of action, Defendants must

prepare a supplemental EIS before proceeding.  Defendants' failure to

prepare a supplemental EIS in light of completely changed circumstances,

and/or a substantial change in the implementation of the chosen action,

violates NEPA.

## VII. CONCLUSION

 Recovery of the Bitterroot grizzly is the lynchpin to recovery and delisting

of the lower-48 States grizzly population.  Over 20 years have passed since the

USFWS issued its final EIS on Bitterroot grizzly recovery, yet the agency has

taken no action to implement its own decision, rule, and regulation.  In light of

dramatically changing circumstances on the ground, the agency can no longer sit

on its hands.  The agency must prepare a comprehensive plan for Bitterroot grizzly

recovery based on the best available science, and with full public participation.

The completion of a supplemental EIS, and the issuance of a new record of

decision and final rule, is the most logical, effective, efficient, and lawful manner

to accomplish this task.

## VIII.  RELIEF REQUESTED

For all of the above-stated reasons, Plaintiffs request that this Court award the

following relief:

A.    Declare that Defendants have violated the APA and/or NEPA;

B.    Order Defendants to prepare a supplemental EIS and issue a new final rule

and record of decision based on the outcome of that NEPA process;

C.    Award Plaintiffs their costs, expenses, expert witness fees, and reasonable

attorney fees under EAJA; and

D.    Grant Plaintiffs any such further relief as may be just, proper, and
equitable.


Respectfully submitted this 5th Day of November, 2021.


*/s/ Rebecca K. Smith*
Rebecca K. Smith
PUBLIC INTEREST DEFENSE CENTER, PC

Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC

Attorneys for Plaintiffs